**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LAWRENCE WEST,** <br> **Plaintiff,** <br><br> **v.** <br><br> **TOWNSHIP OF IRVINGTON; COUNTY OF ESSEX; SCHRONDA WILLIAMS; DETECTIVE MCDUFFIE; DETECTIVE WARREN; LIEUTENANT WILSON; SERGEANT MCKENZIE; DETECTIVE STEPHANIE KELLY; and JOHN/JANE DOES 1-10, in their individual and official capacities,** <br> **Defendants.** | **Civil Action No.: _____** <br><br> **COMPLAINT AND JURY DEMAND** <br> **(42 U.S.C. § 1983; NJCRA;** <br> **Declaratory/Equitable Relief)** |

## I. INTRODUCTION

1. Plaintiff Lawrence West ('Plaintiff') is a pro se litigant residing at 10 Cottage Place, Irvington, New Jersey 07111. Defendants' addresses for purposes of this initial pleading are: Township of Irvington (1 Civic Square, Irvington, NJ 07111); Irvington Department of Public Safety / Irvington Police Department, including Internal Affairs (561 Nye Avenue, Irvington, NJ 07111) (for Irvington employees named herein); County of Essex (465 Dr. Martin Luther King Jr. Boulevard, Newark, NJ 07102); Essex County Department of Corrections / Essex County Correctional Facility (354 Doremus Avenue, Newark, NJ 07105) (for Essex County employees named herein).

2. This civil rights action arises from (a) an on-scene May 4, 2022 incident involving an Essex County Department of Corrections employee and (b) subsequent obstruction, delay, and retaliatory handling of Plaintiff's complaints by municipal and county actors, including Internal

Affairs processes, resulting in loss of time-limited judicial remedies, deprivation of accurate notice, and ongoing denial of meaningful access to processes promised by policy and law.

3. Plaintiff seeks compensatory damages, declaratory relief, and narrowly tailored equitable relief, including preservation and production of records and an order requiring constitutionally adequate complaint intake, notice, and non-retaliation.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

5. This Court has supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367, including claims under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq.

6. Venue is proper in this District under 28 U.S.C. § 1391 because the events and omissions giving rise to the claims occurred in this District and Defendants reside and/or maintain principal places of business in this District.

## III. PARTIES

7. Plaintiff Lawrence West is an adult resident of Irvington Township, Essex County, New Jersey.

8. Defendant Township of Irvington ('Irvington' or 'Township') is a New Jersey municipal corporation with principal offices at 1 Civic Square, Irvington, New Jersey 07111. The Township operates, funds, supervises, and sets policy for the Irvington Department of Public Safety / Irvington Police Department ('IPD'), including training, supervision, and Internal Affairs processes.

9. Defendant County of Essex ('Essex County' or 'County') is a New Jersey county government with principal offices at 465 Dr. Martin Luther King Jr. Boulevard, Newark, New Jersey 07102.

Essex County acts through, funds, supervises, and sets policy for the Essex County Department of Corrections ('EDOC').

10. Defendant Schronda Williams ('Williams') is, upon information and belief, an investigator or employee of EDOC. Williams is named for her role as the suspect/actor in the May 4, 2022 incident described below. For service, Williams may be served c/o Essex County Department of Corrections / Essex County Correctional Facility, 354 Doremus Avenue, Newark, New Jersey 07105.

11. Defendant Detective McDuffie ('McDuffie') is, upon information and belief, an IPD detective assigned to investigate Plaintiff's May 4, 2022 report. McDuffie is named based on his role as the assigned detective, including admissions in recorded communications that he did not interview the suspect. For service, McDuffie may be served c/o IPD, 1 Civic Square, Irvington, New Jersey 07111.

12. Defendant Detective Warren ('Warren') is, upon information and belief, an IPD detective who provided information to Plaintiff regarding disposition and 'referral to court' and/or participated in closeout of Plaintiff's report without a supplemental report. For service, Warren may be served c/o IPD, 1 Civic Square, Irvington, New Jersey 07111.

13. Defendant Lieutenant Wilson ('Wilson') and Defendant Sergeant McKenzie ('McKenzie') are, upon information and belief, IPD supervisors reflected in CAD/incident detail and/or supervisory handling of the May 4, 2022 incident. They are named for their supervisory roles in the response and subsequent handling. For service, Wilson and McKenzie may be served c/o IPD, 1 Civic Square, Irvington, New Jersey 07111.

14. Defendant Detective Stephanie Kelly ('Kelly') is, upon information and belief, an IPD detective assigned to Internal Affairs. In or about 2025, IPD Internal Affairs assigned Plaintiff's

matter to Detective Kelly, and Kelly communicated with Plaintiff in connection with that assignment. For service, Kelly may be served c/o IPD Internal Affairs, 561 Nye Avenue, Irvington, New Jersey 07111.

15. Defendants John/Jane Does 1-10 are additional persons, including supervisors, policymakers, records custodians, and/or Internal Affairs personnel, whose identities are presently unknown. Plaintiff will amend to identify them when discovered.

## IV. FACTUAL ALLEGATIONS

16. On May 4, 2022, Plaintiff reported an incident in Irvington, New Jersey involving an Essex County Department of Corrections employee (Defendant Williams). IPD generated an incident report and CAD entry, including CC-2022-003123. (Exs. A-B).

17. IPD dispatch and CAD records reflect that officers responded and that supervisory personnel, including Sgt. McKenzie and Lt. Wilson, were involved in the incident handling and/or CAD entries on May 4, 2022. (Ex. A).

17A. The Investigation Report associated with the May 4, 2022 incident (I-2022-038993 / CC-2022-003123) identifies Lt. Glenise Wilson as the approving officer for the report on May 4, 2022 at 19:13. (Ex. B). Plaintiff alleges that this supervisory approval reflects ratification of the report's characterization and handling of the incident, including the decision to treat the matter as an "investigation report submitted" rather than pursuing timely follow-up, documentation, and victim notice.

17B. CAD narratives further reflect that Sgt. Iona McKenzie and Lt. Glenise Wilson were not merely listed on paper but generated supervisory entries during the response (including a supervisor returning to speak with Plaintiff and provide incident/case numbers, and Sgt. McKenzie contacting the Assistant Prosecutor's Office and directing that an investigation report be completed and that the suspect contact Internal Affairs). (Ex. A).

18. Plaintiff also obtained 911-related records and timing logs for May 4, 2022 that corroborate the report and response timeline. (Ex. C).

19. In 2025, Plaintiff sought status and disposition information regarding CC-2022-003123. In or about October 2025, in recorded communications, Detective McDuffie acknowledged he never interviewed the suspect. (Ex. D).

20. In additional recorded communications around the same period, Detective Warren characterized the matter as a "neighbor dispute," suggested it was "referred to court," and described the incident report as "limited." Plaintiff pointed out that "referred to court" is not reflected in the report. Warren did not identify any complaint-summons, docket number, or other disposition documentation in the file. Plaintiff alleges that Warren's "limited" characterization conflicts with the report's narrative and supervisory approval and further evidences minimization and concealment rather than documented disposition. (Ex. E; Ex. B).

21. On or about October 24, 2025, Plaintiff served a Tort Claim Notice relating to the May 4, 2022 incident and subsequent handling.

22. On or about October 30, 2025, Plaintiff spoke with Essex County Prosecutor's Office Professional Standards Bureau Sgt. Posada, who explained that the matter had been referred to IPD Internal Affairs and to the jail/EDOC Internal Affairs for review, and that ECPO would monitor the matter. (Ex. F).

23. Notwithstanding the referral described by Sgt. Posada, Plaintiff received no contact from IPD Internal Affairs for approximately 26 days and, to date, Plaintiff has received no contact from EDOC Internal Affairs regarding the referral.

24. Through an OPRA response produced by the Essex County Prosecutor's Office (and not sent to Plaintiff by IPD), Plaintiff obtained a November 25, 2025 internal IPD Internal Affairs email titled 'Stage 1 IA#2025-143' describing itself as an 'official notification of an incoming citizen complaint.' The email classified the matter as 'Performance of Duty' against 'Det. McDuffie,'

listed 'Date: October 2022,' referenced a notice of tort claim and Township Attorney routing, referenced CC-2022-003123, stated that on 05-04-22 proper notifications were made to ECPO and the Essex County Correctional Facility, and stated there were 'no further documents generated from Det. McDuffie.' (Ex. H).

25. Plaintiff did not supply 'October 2022' as the date of the incident; Plaintiff alleges the 'October 2022' entry is inconsistent with the underlying May 4, 2022 incident and was inserted by IPD-IA in the Stage 1 notification document, evidencing misrecording, backfilling, or pretextual file framing.

26. On November 26, 2025, Plaintiff appeared in person at IPD Internal Affairs because he had received no Internal Affairs outreach and had not been provided a case number, assigned investigator, or meaningful disposition explanation. Internal Affairs personnel stated the matter was assigned to Detective Kelly and pressured Plaintiff to provide an interview/statement as a prerequisite to receiving basic information. (Ex. I).

27. On December 9, 2025, Plaintiff provided a written statement, and IPD Internal Affairs issued a 'Report Acknowledgement' confirming receipt of the report made by Plaintiff on December 9, 2025 concerning actions occurring in May 2022, and issued a citizen information sheet stating: 'Be advised, your complaint will be based on the typed statement you provided. You did not provide an audio/visual statement to the Office of Internal Affairs.' (Ex. K).

28. On December 9, 2025, in recorded communications, Detective Kelly confirmed she was the case detective and discussed Internal Affairs intake practices, while agreeing to accept Plaintiff's typed statement as his statement. (Ex. J).

29. After being told the matter was 'referred to court,' Plaintiff sought confirmation from Irvington Municipal Court via OPRA (record request #25-1960). The Municipal Court

responded, in substance, that a search of Plaintiff's name as a victim or complainant did not produce a complaint or summons number; that the court was unable to use the CC number provided to locate any summons listing Plaintiff as a victim; requested Plaintiff to provide the complaint number of the offense; and stated that Plaintiff's request was vague and asked him to clarify what 'referral to court' meant. (Ex. G).

30. Plaintiff sought body-worn camera records through OPRA. In a memorandum dated December 4, 2025 responding to OPRA Request 25-2238, Irvington Police Division stated: 'No Body worn camera assigned to those officers during that time.' (Ex. L).

31. In a separate memorandum dated December 4, 2025 responding to OPRA Request 25-2237, Irvington Police Division stated: 'No Body Worn Camera policy at that time.' (Ex. M).

32. On or about December 8, 2025, Plaintiff sent a written civil rights demand letter to the Township defendants providing 15 business days to respond and proposing resolution. As of the date of filing, the Township has not provided a substantive response.

33. Plaintiff has received a response from Inservco, an insurer/claims administrator responding on behalf of Essex County; however, Plaintiff has received no substantive response from EDOC regarding the prosecutor-referenced referral.

33A. On December 11, 2025, Plaintiff emailed Detective Stephanie Kelly and copied ECPO Professional Standards (complaints@njecpo.org) to clarify that the IA number and Report Acknowledgement in Plaintiff's name were first issued on December 9, 2025; to memorialize the full scope of his complaint as encompassing the May 3–4, 2022 incident and IPD handling; and to object to any narrowing of the complaint to a single officer or a misdated file narrative. (Ex. O).

33B. On December 19, 2025, Plaintiff emailed ECPO Professional Standards to memorialize that 50 calendar days (36 business days) had elapsed since the October 30, 2025 PSB referral call and EDOC Internal Affairs still had not contacted him, and to request written confirmation of EDOC intake (including any EDOC IA case number and assigned investigator/supervisor), a description of PSB monitoring actions, and preservation of PSB records. (Ex. P).

33C. As of January 4, 2026, Plaintiff's OPRARequest.com dashboard reflected at least nine pending OPRA requests relating to EDOC Internal Affairs intake and referral communications, with listed due dates ranging from December 19, 2025 through December 29, 2025, yet still pending. (Ex. Q).

34. Plaintiff alleges that Defendants' concealment, delay, and shifting explanations caused him to lose time-limited judicial remedies and impaired his ability to pursue relief with a complete evidentiary record, including by obscuring whether and when any citizen-complaint process, referral, or court process was initiated.

34A. Since October 29, 2025, Plaintiff has been engaged in outpatient psychotherapy to address anxiety and related symptoms associated with the May 4, 2022 incident and ongoing stressors connected to that event. Plaintiff is seen at least weekly and, at times, more frequently (including with a second provider). One treating clinician has diagnosed Adjustment Disorder with Anxiety (F43.22) and utilizes Cognitive Behavioral Therapy (CBT).

## V. CLAIMS FOR RELIEF

35. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

**COUNT I - 42 U.S.C. § 1983 - DENIAL OF ACCESS TO THE COURTS (BACKWARD-LOOKING)**

36. Plaintiff had nonfrivolous underlying legal claims arising from the May 4, 2022 incident, including the ability to pursue time-limited municipal court remedies and related judicial process available to private citizens (including seeking issuance of process on a citizen complaint) while evidence and witnesses were fresh.

37. Defendants, acting under color of state law, took actions and omissions that collectively obstructed Plaintiff's ability to timely and meaningfully pursue those claims, including: failure to provide timely notice of disposition; shifting explanations about 'referral to court' without traceable court process; withholding of Internal Affairs case information; and maintaining or using processes that delayed and distorted intake and notice.

38. Plaintiff alleges these acts and omissions caused concrete prejudice, including loss of time-limited municipal court remedies (including, upon information and belief, the one-year limitation period applicable to filing certain disorderly persons / petty disorderly persons complaints) and loss of an effective opportunity to secure timely judicial process while evidence and witnesses were fresh. Plaintiff does not claim a constitutional entitlement to compel prosecution; the injury is the foreclosure of time-limited court process and related relief due to concealment, delay, and misdirection.

39. As a direct and proximate result, Plaintiff suffered injury and is entitled to compensatory damages and appropriate equitable relief.

**COUNT II - 42 U.S.C. § 1983 - FIRST AMENDMENT RETALIATION (PETITION / COMPLAINT ACTIVITY)**

40. Plaintiff engaged in protected activity, including reporting crime, seeking records, communicating with law enforcement, serving a Tort Claim Notice, and sending a civil rights demand letter.

41. Defendants took adverse actions that would deter a person of ordinary firmness from continuing to engage in protected activity, including delaying intake and notice, pre-framing the complaint as a 'Performance of Duty' matter without meaningful complainant participation, refusing or conditioning access to basic case information on coercive intake practices, and providing misleading or unsupported explanations about court referral.

42. Plaintiff alleges a causal connection between his protected activity and the adverse actions, including temporal proximity and the explicit linkage of the Internal Affairs intake to the tort claim notice and Township Attorney routing.

43. As a direct and proximate result, Plaintiff suffered damages and is entitled to relief.

**COUNT III - 42 U.S.C. § 1983 - SUPERVISORY LIABILITY**

44. Supervisory Defendants and Internal Affairs supervisory personnel knew or should have known of constitutionally significant risks created by deficient complaint intake, disposition notice, and follow-through practices, including risks of concealment and loss of time-limited remedies.

45. These supervisory Defendants participated in, directed, or knowingly acquiesced in the challenged practices and failures, including permitting investigative non-action, permitting the use of misleading 'referral to court' narratives without documentation, and permitting delayed or distorted Internal Affairs intake and notice.

46. Their deliberate indifference and/or knowing acquiescence was a moving force behind the constitutional deprivations alleged herein.

**COUNT IV - 42 U.S.C. § 1983 - MUNICIPAL LIABILITY (MONELL) - POLICY / CUSTOM**

47. Plaintiff alleges that Irvington maintained policies, customs, or practices that caused the constitutional violations described above, including customs or practices of delaying citizen complaint intake, conditioning access to case identifiers and basic information on coercive interview demands, and using vague or unsupported 'court referral' explanations without traceable process or notice.

48. Plaintiff further alleges that Essex County maintained policies, customs, or practices that caused constitutional violations, including failure to ensure EDOC Internal Affairs intake and response after prosecutor-referenced referral.

49. These policies, customs, and practices were moving forces behind Plaintiff's injuries.

**COUNT V - 42 U.S.C. § 1983 - MUNICIPAL LIABILITY (MONELL) - FAILURE TO TRAIN / SUPERVISE / DISCIPLINE**

50. Alternatively and/or additionally, Plaintiff alleges that Irvington and Essex County failed to adequately train, supervise, and discipline personnel regarding citizen complaint intake, accurate disposition documentation, timely victim/complainant notice, non-retaliation, and preservation of responsive records, and that these failures amounted to deliberate indifference.

51. Plaintiff alleges that, among other deficiencies, Irvington's OPRA responses reflect failures regarding body-worn camera assignment and policy during the relevant period, increasing the need for accurate reporting, supervision, and record preservation.

52. These failures were moving forces behind the constitutional deprivations and Plaintiff's injuries.

**COUNT VI - NEW JERSEY CIVIL RIGHTS ACT (N.J.S.A. 10:6-1 et seq.)**

53. Plaintiff incorporates the preceding paragraphs. Defendants, acting under color of law, interfered with, or attempted to interfere with, Plaintiff's rights secured by the New Jersey Constitution and laws, including rights analogous to those protected by the First and Fourteenth Amendments.

54. Plaintiff is entitled to all remedies available under NJCRA, including damages and equitable relief.

**VI. PRAYER FOR RELIEF**

55. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

- Declaratory judgment that Defendants' challenged acts and omissions violated Plaintiff's constitutional and statutory rights;

- Compensatory damages in an amount to be determined at trial;

- Punitive damages against the individual Defendants to the extent permitted by law;

- Reasonable costs and fees to the extent permitted by law;

- Appropriate equitable relief, including orders requiring constitutionally adequate complaint intake, non-retaliation, timely notice/disposition documentation, and preservation of responsive records;

- Such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

56. Plaintiff demands trial by jury on all issues so triable.

## VIII. VERIFICATION (28 U.S.C. § 1746)

57. I, Lawrence West, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: ___01/6/2026___

___[signature]___

Lawrence West, Pro Se

10 Cottage Place

Irvington, NJ 07111

Email: lawsofthebody@gmail.com

Telephone: 201-344-6224

## EXHIBIT INDEX

Exhibit A: Irvington Police Department CAD report (CC-2022-003123) (May 4, 2022).

Exhibit B: Irvington Police incident/police report (CC-2022-003123) (May 4, 2022).

Exhibit C: 911 call / dispatch timing record (May 4, 2022).

Exhibit D: Detective McDuffie phone call transcript (October 2025).

Exhibit E: Detective Warren phone call transcript (October 2025).

Exhibit F: ECPO Sgt. Posada phone transcript (October 30, 2025).

Exhibit G: Irvington Municipal Court OPRA response (Request #25-1960).

Exhibit H: IPD Internal Affairs email (Stage 1 IA#2025-143) (November 25, 2025) (produced via ECPO OPRA).

Exhibit I: Irvington Internal Affairs office-visit transcript (November 26, 2025).

Exhibit J: Recording 23 (Internal Affairs) transcript (December 9, 2025).

Exhibit K: IPD Internal Affairs Report Acknowledgement + Citizen Complaint Information Sheet (IA#2025-143) (December 9, 2025).

Exhibit L: OPRA response memorandum (Request 25-2238) - no BWC assigned (December 4, 2025).

Exhibit N: Treatment verification letter (Adriane Villanueva, LPC, LCADC) (December 3, 2025) (DOB redacted).

Exhibit M: OPRA response memorandum (Request 25-2237) - no BWC policy (December 4, 2025).

**COUNTS VII AND VIII — FINAL VERSION INCLUDING OPRA TIMELINE**

COUNT VII — 42 U.S.C. § 1983

PROCEDURAL DUE PROCESS VIOLATION (FOURTEENTH AMENDMENT)

Plaintiff had a constitutionally protected interest in accessing municipal and administrative remedies. Following the May 4, 2022 incident, Plaintiff submitted to police intake and was identified as a victim. The police report (#1-2022-038993) was signed and approved by Lt. Wilson, confirming that it reached supervisory review.

The case status remains "Pending" with no documented closure, adjudication, or referral. Despite this, Plaintiff never received a notice of disposition, closure letter, or any outreach from the Irvington Police Department.

On or about October 30, 2025, the Essex County Prosecutor's Office (ECPO) informed Plaintiff that the matter had been referred to both Irvington IA and the Essex County Jail's IA. ECPO stated that both departments would "look into it" and reach out to Plaintiff. No contact from EDOC IA has occurred to date, despite this expectation.

On Nov 26, 2025, Plaintiff was discouraged from involving legal counsel during an IA intake attempt. Staff minimized the right to counsel, pressured Plaintiff to proceed immediately, and refused to intake the complaint unless Plaintiff agreed. This is confirmed in the transcript of that visit.

On Nov 25 — before any intake — Det. Kelly authored an internal email falsely stating the complaint had already been made, that proper notifications were completed, and that Det. McDuffie was the target. These statements were demonstrably false at the time made.

Plaintiff filed public records requests under the Open Public Records Act (OPRA) on November 20, 2025. Irvington acknowledged them and unilaterally extended the response deadline to January 5, 2026. As of the date of this filing (January 5), no response or production has occurred. These overdue requests include IA intake metadata, SOPs, and routing records essential to verifying how Plaintiff's complaint was handled.

These systemic failures deprived Plaintiff of meaningful process and accountability. Relief is sought for violation of due process.

COUNT VIII — STATE-LAW CLAIMS

NEGLIGENT MISREPRESENTATION AND EMOTIONAL DISTRESS